George FROOKS, Joan Maskell, Mohegan Plaza, Inc. and George Frooks d/b/a Frooks Realty, Plaintiffs,

v.

TOWN OF CORTLANDT, Linda D. Puglisi, individually and in her capacity as Town Supervisor, Vincent F. Nyberg, P.E., R.A., individually and in his capacity as Director of Code Enforcement and Deputy Town Engineer, Barbara K. Miller, individually and in her capacity as Deputy Director of Code Enforcement, Harriet L. Boyle, individually and in her capacity as Town Clerk, Anthony Turco, individually and in his capacity as a member of the Department of Code Enforcement and Building Inspector, John Hamilton, individually and in his capacity as a member of the Department of Code Enforcement and Town Fire Inspector, Jack Gaffney, individually and in his capacity as Town Supervisor, Robert Conlon individually and in his capacity as Fire Inspector, and John T. Felt, individually and in his capacity as Director, Department of Planning and Community Improvement, Defendants.

No. 93 Civ. 7372(WCC).

United States District Court, S.D. New York.

March 11, 1998.

440

**444**

Ginsberg, Katsorhis & Fedrizzi, Flushing, NY, for Plaintiffs; Kerry J. Katsorhis, Linda F. Fedrizzi, of counsel.

1. Plaintiffs' unsworn "Statement of Material Facts," filed January 15, 1998 pursuant to Local Rule 56.1, will not be considered, because it does not cite to the record, in direct violation of the Rule. *See* Local Rule 56.1(d) (requiring each statement of material fact to be followed by citation to admissible evidence); *Lilenfeld v. Kiepper*, No. 93 Civ. 5691, 1997 WL 607547, at *1 n. 2 (Oct. 1, 1997) (striking inadequate statement under former Rule 3(g)).

The Court declines, however, to accept as true all of the facts contained in defendants' properly submitted Rule 56.1 statement, because plaintiff Frooks' affirmation in response to the statement, and plaintiffs' Rule 56.1 statement filed March 9, 1998, cite to admissible evidence.

Plaintiff Frooks is an attorney admitted to practice in the State of New York, who has personal knowledge of the relevant facts. *Cf.*

Landman Corsi Ballaine & Ford, Newark, NJ, for Defendants; John A. Bonventre, Jerry A. Cuomo, Ruth D. Kirshner, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs George Frooks, d/b/a Frooks Realty ("Frooks"), Joan Maskell, and Mohegan Plaza, Inc. brought this action against defendants the Town of Cortlandt, New York (the "Town"); and Linda Puglisi, Town Supervisor; Vincent Nyberg, Director of Code Enforcement and Deputy Town Engineer, now deceased; Barbara Miller, Deputy Director of Code Enforcement; Harriet Boyle, Town Clerk; Anthony Turco, Town Building Inspector; John Hamilton, Town Fire Marshall and Assistant Building Inspector; Jack Gaffney, Town Supervisor; Robert Conlon, Fire Inspector and Assistant Building Inspector; and John Felt, Town Planner (collectively, the "Town employees"), alleging violations of 42 U.S.C. §§ 1983, 1985, and 1986, 18 U.S.C. § 1961 *et seq.*, the First, Fourth, Sixth and Fourteenth Amendments of the United States Constitution, unspecified provisions of the New York State Constitution, and New York common law. Defendants now move for summary judgment, and plaintiffs cross-move for partial summary judgment. For the reasons discussed below, defendants' motion is granted and plaintiffs' motion is denied.

### BACKGROUND

The parties assault the following facts.[1] Plaintiffs have owned, during all rele-

*Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983) (attorney affirmation not based on personal knowledge accorded no weight on summary judgment motion). Because the affirmation satisfies the purpose of Rule 56.1, namely, to aid the Court in determining the undisputed material facts, the Court will accept the affirmation as evidence. *Accord United States v. Barrier Industries, Inc.*, No. 95 Civ. 9114, 1998 WL 31491, at *1 n. 2 (Jan. 28, 1998) (admitting facts based on citations to admissible evidence contained in memoranda of law); *Yonkers Comm'n on Human Rights v. City of Yonkers*, 654 F.Supp. 544, 554 (S.D.N.Y.1987) (same). *See also Schneider v. OG & C Corp.*, 684 F.Supp. 1269, 1271 (S.D.N.Y. 1988) (relying on affidavits and other documentary evidence for material facts).

Additionally, we will consider plaintiffs' subsequently filed Rule 56.1 statement. Rule 56.1

vant times, thirty-eight acres of land in the Town (the "property"). Approximately 9.4 acres are zoned CD-commercial ("commercial") and the remainder is zoned R–40, single-family residential ("residential"). The property is mostly vacant, with the exception of a few, old wood frame buildings, some of which are occupied by plaintiffs, and others which are rented to residential and commercial tenants. The property fronts Route 6, a main road.

### A. Zoning Change

■ In February, 1989, Frooks applied to the Town to re-zone four acres of the property from residential to commercial in order to build a shopping mall. Accordingly, pursuant to the State Environmental Quality Review Act ("SEQRA"), N.Y. Envtl. Conserv. Law § 8–0103 et seq. (McKinney's 1984) ("ECL"),[2] the Town directed Frooks to submit a Draft Environmental Impact Statement ("DEIS") and deposit $5,500 into an escrow account to cover the review of the DEIS. Plaintiffs claim that prior to his submission of the DEIS, Town employees told Frooks that his application was compatible with the Town's Master Plan. Defendants maintain that John Felt, Town Planner, and Ken Verschoor, Deputy Town Planner, told Frooks that it was difficult to obtain a zoning change, and that applications for re-zoning were seldom granted.

In September, 1990, the Town's expert issued comments on the DEIS and by resolution, the Town directed Frooks to address

them. In February, 1991, Frooks submitted a revised DEIS and deposited an additional $4,842 into the escrow account. By letter, the Town's expert advised Frooks that the revised DEIS did not address all of the expert's concerns. Accordingly, the Town rejected the revised DEIS. Frooks maintains that the Town Board never reviewed the revised DEIS, because Felt did not submit it.

In June, 1991, Frooks met with Felt. While the parties' recollection of that meeting differs, they agree that Felt informed Frooks that he would need to submit additional site plans and escrow deposits in order for the Town to pursue his application.

In July, 1991, Frooks sent a letter to Felt stating the following:

> I believe I have, in good faith, tried to go along with you and your consultants. Your latest suggestions that I should finance yet another meeting because of problems caused by your consultants' noncompliance with the SEQRA ... is out of the question.

> *Accordingly, I see no reason to proceed. Please refund the balance of my account.*

Defs.' Ex. A (emphasis added). The parties disagree whether Frooks, by this letter, meant to withdraw his application for rezoning or merely to cancel a previously scheduled meeting between Frooks and Felt.

By letter dated August 20, 1991, Frooks requested the Town either to issue further objections to the DEIS, or accept it, so that a

---

does not prohibit the consideration of untimely statements, particularly where the admission of the statement will not prejudice an opposing party. *E.g., Thaler v. Casella*, 960 F.Supp. 691, 697 (S.D.N.Y.1997); *Abu–Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906, 1994 WL 445638, at *5 (S.D.N.Y. Aug.17, 1994). Here, plaintiffs' subsequent statement is the same in all material respects as their original statement, except that it cites to admissible evidence. Moreover, defendants have responded to plaintiffs' original statement. Thus, defendants will not be prejudiced if we consider plaintiffs' statement.

We will, however, deem admitted any facts in defendants' Rule 56 .1 statement that are not addressed in Frooks' affirmation or in plaintiffs' subsequent Rule 56.1 statement. *See* Local Rule 56(c); *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir.1992).

**2.** The purpose of SEQRA is to provide government agencies with an early assessment of environmental considerations in order to guide decision making on applications for zoning changes, permits, licenses, certificates of occupancy or other land use privileges. *See* ECL § 8–0105; NYCRR § 617.21. Under SEQRA, an applicant for a land use privilege may be required to submit an Environmental Impact Statement ("EIS"), according to a "scope" devised by the "lead agency." *Id.,* §§ 617.2(u); 617.8(a). "Scoping" is available to the lead agency to reduce the risk of extensive re-drafting of the EIS. However, scoping is not required. *See id.,* § 617.8(a). The EIS is then reviewed by the lead agency's expert, who either objects or approves it. Upon approval by the lead agency's expert, the application becomes the subject of public hearings. *See* ECL §§ 8–0103, 8–0105, 8–0109; 6 NYCRR § 617.1 *et seq.*

public hearing could be held. On August 21, 1991, Felt sent Frooks a check representing the balance of his escrow account, accompanied by the following statement: "This closes [your] Planning Board File." The following Fall, Thomas Wood, the Town's attorney, sent multiple letters to Frooks stating that Frooks had withdrawn his re-zoning application, and that Frooks would have to re-file the application for the Town to consider it. Frooks answered this correspondence, stating that his application had not been withdrawn.

On or about July 23, 1993, approximately two years after plaintiff's Planning Board File had been deemed closed, the Town issued a new Master Plan proposing the changes Frooks had requested in his application. The Master Plan was the subject of public hearings, which Frooks did not attend. The plan that the Town ultimately adopted did not include Frooks' proposals, because according to the Town, there was public outcry over the prospect of increased traffic along Route 6.

B. *Cabaret License and Certificates of Occupancy*

One of the buildings on plaintiffs' property has housed a "bar/disco" since the 1930s. That building received a certificate of occupancy in 1981, under the New York State Construction Code, formerly N.Y.Exec. Law §§ 370–387 (the "Construction Code"). In 1984, the Construction Code was superseded by the New York State Uniform Fire Prevention and Building Code, N.Y.Exec. Law § 373 *et seq.* (McKinney's 1993) (the "Uniform Code" or the "Code"). The Uniform Code requires certain minimum training and enforcement standards for the fire protection, construction and maintenance of buildings. *See id.,* § 371(b). The Code also requires a municipality to petition the State if the municipality wishes to enact more restrictive standards than those prescribed by the Code. *See id.,* § 379(2).

On June 18, 1985, the Town Board adopted an ordinance providing for the licensing of "cabarets," defined as "any room, place or space in the town where for gain or profit, live or mechanically reproduced music is pro-

vided in connection with dancing or where, for gain or profit, any musician, group of musicians, floor show or similar live entertainment is provided." Local Law No. 4, Cortlandt Code § 23–2 (the "Cabaret Law"). The Cabaret Law required, among other things, that all such establishments have sprinklers and smoke detectors in "each storage room, attic, basement, cellar [or] other concealed location[ ]." *See id.,* § 23–12 K. Moreover, the law required any licensed cabaret to apply for a supplemental license whenever there was a change in ownership or management. *See id.,* §§ 23–7B; 23–4A(3), (4), (5), (20). Plaintiffs allege that these requirements were significantly more restrictive than the provisions of the Uniform Code, and that the Town enacted the Cabaret Law without first petitioning the State for permission, in violation of the Code. Plaintiffs further allege that they were "forced to make ... concessions to keep the premises rented," due to the law's requirements.

In 1987, plaintiffs' tenant, Michael Tommorello, d/b/a Omega Entertainment or Foxes, applied for a cabaret license. The Town granted the application under the condition that a sprinkler system would be installed on the premises. Accordingly, Frooks submitted a $10,000 security deposit to the Town, in the form of a passbook, to cover potential damage to the water main beneath Route 6.

In early 1990, plaintiffs leased the premises to new tenants, JoAnn DiConstanzo and Anthony Brucculeri, d/b/a Cousin's Entertainment or Alibi's ("Cousin's or Alibi's"). The lease provided that Cousin's would install a sprinkler system on the premises.

On April 4, 1990, defendant John Hamilton, Town Fire Marshall and Assistant Building Inspector, observed what he believed to be construction debris, including a header from a door or window, behind Alibi's. Hamilton entered the bar and determined that structural alterations were being made. Hamilton then issued a stop work order prohibiting Cousin's from completing any work until it had obtained a building permit. Plaintiffs claim that Cousin's was merely redecorating Alibi's and that no building permit was required.

On April 12, 1990, defendants Hamilton, Vincent Nyberg, Director of Code Enforcement, and Anthony Turco, Town Building Inspector, inspected the bar and the remainder of the building. Plaintiff Frooks, Anthony Miraglia, Frooks' handyman and Charles DeFeo, Frooks' engineer, were present. Defendants maintain that plaintiffs did not object to the scope of the inspection. Upon completing the inspection, Nyberg and Turco issued a 42–item list of corrections, or "punch list," which, among other things, indicated that the April 4 stop work order remained in effect. Plaintiffs allege that Nyberg orally released the stop work order, on May 7, 1990, when Frooks agreed to "bring the floors and the ceiling ... up to the new designing loads for new construction."

On May 18, 1990, Hamilton again entered the building, observed an open section of the floor, and issued a second stop work order. Hamilton also issued a criminal appearance ticket to plaintiff Frooks, on the ground that the original stop work order had not been released and that Frooks had violated it, by opening the floor.

On June 6, 1990, plaintiff Frooks applied for a building permit in order to make "interior structural and cosmetic repairs." The criminal charges were voluntarily withdrawn on July 10, 1990, upon Frooks' arraignment, because Frooks had applied for the permit.

In September and October, 1990, defendants continued to inspect the premises. They claim that on various occasions, the Town cited plaintiff for additional items in need of repair under the Uniform Code.

In October, 1990, Alibi's opened for business without a cabaret license. Defendants maintain that Frooks and Cousin's allowed bands and disc jockeys to perform, without a license, in violation of the Cabaret Law. Cousin's then applied for a cabaret license, which was denied, because it had not yet installed a sprinkler system. Plaintiffs contend that Alibi's opened as a bar in October 1990, and did not open as a cabaret until 1991. Moreover, plaintiffs claim that when Alibi's opened as a bar, an application for a cabaret license was pending.

On November 5, 1990, Cousin's was issued two appearance tickets charging it with occupying an unsafe structure and occupying a building without a certificate of occupancy. Plaintiffs claim that the building was issued a valid certificate of occupancy in 1981, and that the type of repairs that were being made did not require a permit or an additional certificate of occupancy. Plaintiffs further allege that the tickets were issued on account of a "personal vendetta" between Nyberg and Frooks, that when issuing the tickets, Nyberg "made malicious comments" about Frooks, and that the tickets were based on "[m]aterially false reports." The charges against Cousin's were withdrawn without prejudice in June, 1991, on the grounds that it was repairing the allegedly defective items.

Additional appearance tickets were issued on December 14, 1990 and January 19, 1991 to Alibi's manager, Michael DiConstanzo, for allowing bands to perform and dancing, without a license, in violation of the Cabaret Law. These charges were also withdrawn without prejudice in June, 1991. Alibi's continued to operate without a cabaret license.

By letter dated March 6, 1991, plaintiff Frooks informed the Town that he would not be installing a sprinkler system and requested the return of his $10,000 deposit. Plaintiffs claim that Frooks wrote the letter, because he had determined that the Cabaret Law was invalid under the Uniform Code. Plaintiffs further allege that Frooks had to write to the Town multiple times, before the Town returned his deposit, and that by failing timely to return the deposit, the Town caused him "to deplete his life savings and increase his debt dramatically."

On or about March 10, 1991, the Town denied Frooks' application for a certificate of occupancy. Frooks appealed the Town's denial to the Department of State, Uniform Code Board of Review (the "Review Board") on March 12, 1991. At the hearing, Charles DeFeo, Frooks' engineer, testified that the Town had reportedly found exposed wiring in the building during the last inspection. However, Frooks testified that the necessary electrical work had been completed, and produced a certificate of compliance from the New York Board of Fire Underwriters (the

"Fire Underwriters") issued on March 11. Defendants had not been provided with a copy of the certificate prior to the hearing. The Review Board ordered the Town to issue the certificate of occupancy based on the issuance of the certificate of compliance the day before. The Board also ordered the Town to conduct periodic inspections of the building and cite Frooks and his tenants with any further violations of the Code.

On September 23, 1991, Cousin's again applied for a cabaret license, which was denied on or about November 7, 1991, because hazardous conditions had been found on the premises. Plaintiff Frooks states that he assisted Cousin's in applying for the license, but did not sign the application. Cousin's appealed the denial, and on or about November 25, 1991, that appeal was denied.

In June 1992, plaintiffs Frooks and Maskell brought an Article 78 proceeding in the Supreme Court for the State of New York, Westchester County, demanding a declaration that the Cabaret Law was invalid. On January 12, 1993, the court struck down sections of the Cabaret Law as invalid under the Uniform Code.

### C. The Instant Action

■ Plaintiffs filed the instant action on October 25, 1993, alleging that defendants had denied or withheld the re-zoning approval, cabaret licenses and certificate of occupancy in violation of the First, Fourth, Sixth and Fourteenth Amendments of the Constitution, 42 U.S.C. §§ 1983, 1985 and 1986, 18 U.S.C. § 1961 et eg., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), unspecified provisions of the New York State Constitution, and New York common law.[3] Defendants now move for summary judgment and plaintiffs cross-move for partial summary judgment pursuant to Fed. R.Civ.P. 56.

3. Plaintiffs state these claims repetitively throughout their 135–page complaint. As such, plaintiffs have violated Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement" of their claims. The Court, however, does not dismiss the Complaint on these grounds, but rather because plaintiffs have failed to show the exis-

### DISCUSSION

#### I. Summary Judgment Standard

"Summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." United National Ins. Co. v. The Tunnel, Inc., 988 F.2d 351, 355 (2d Cir.1993). A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 45 (2d Cir.1988). If there is evidence in the record concerning any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment will be denied. Holt v. KMI–Continental, Inc., 95 F.3d 123, 128 (2d Cir.1996), cert. denied, — U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). This is because the Court is charged with "issue finding," not "issue resolution." Gallo v. Prudential Residential Servs., Ltd., Partnership, 22 F.3d 1219, 1224 (2d Cir.1994).

Once a party moves for summary judgment, the nonmovant must come forward with specific, material facts showing the existence of a genuine issue for trial. Fed. R.Civ.P. 56(e); West–Fair Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir.1996). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 249. However, mere conclusory allegations, speculation or conjecture will not avail a party that resists summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996).

tence of a genuine issue of fact for trial. See infra parts I.–V. Cf. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised").

"When faced with cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for one side or the other.... 'Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (quoting *Schwabenbauer v. Bd. of Educ. of City of Olean*, 667 F.2d 305, 314 (2d Cir.1981)). *See also Aviall, Inc. v.. Ryder System, Inc.*, 913 F.Supp. 826, 828 (S.D.N.Y.1996) ("on cross-motions for summary judgment, the standard is the same as individual motions for summary judgment") (citing *Heublein, Inc.*, 996 F.2d at 1461), *aff'd on other grounds*, 110 F.3d 892 (2d Cir.1997).

## II. *Section 1983 Claims*[4]

### A. *Denial of Substantive Due Process*

■■■ Both parties move for summary judgment on plaintiffs' substantive due process claim. "Substantive due process protects against government action that is arbitrary, conscience–shocking, or oppressive in a constitutional sense, but not against a government action that is merely 'incorrect or ill advised.'" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 538 (2d Cir. 1994)). When considering a due process claim for the denial of a re-zoning application, "we are mindful of the general proscription that 'federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by ... local legislative and administrative agencies.'" *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir.1995) (quoting *Sullivan v. Town of Salem*, 805 F.2d 81, 82 (2d Cir.1986)).

■■■ To state a substantive due process claim, the Complaint must first demonstrate a "'legitimate claim of entitlement' to the benefits in question." *Crowley v. Courville*,

76 F.3d 47, 52 (2d Cir.1996) (quoting *Zahra*, 48 F.3d at 680) (internal citation omitted). "The focus of the analysis is on the nature of the applicant's interest ... specifically whether the applicant has *a clear entitlement* to the approval sought by the government official or administrative body." *Walz v. Town of Smithtown*, 46 F.3d 162, 167–68 (2d Cir.1995) (emphasis added) (internal citations omitted). The key to determining the existence of such property interest is the extent to which the deciding authority may exercise discretion in reaching its decision, rather than an estimate of the likelihood of a particular result. *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir.1989). If there exists an adequate property interest, then the plaintiff must show that the defendants acted in an arbitrary or irrational manner to deprive him or her of that interest. *See Crowley*, 76 F.3d at 52.

### 1. *Re-zoning Application*

Plaintiffs maintain that defendants violated the Due Process Clause of the Fourteenth Amendment, by denying their "right to go forward with [plaintiff Frooks'] request for a change of zoning." Plaintiffs, however, do not explain how defendants denied such right, or plead a basis for such right, in their papers. For the purposes of deciding this motion, the Court will assume that plaintiffs base their claim on defendants' alleged failure to act upon Frooks' application.

■■■ As previously stated, "[i]n the context of a zoning dispute, to state a claim under the fourteenth amendment for deprivation of 'property' without due process of law [a plaintiff] must establish that he had a valid 'property interest' in some benefit that was protectable under the fourteenth amendment." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.1988). Since such property interests "'are not created by the Constitution' ... courts ... must look to

---

4. The Court will consider plaintiffs' section 1983 against the Town employees in their official capacities as a claim against the Town under section 1983. *See Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611. Moreover, the Court declines to consider plaintiffs' direct constitutional claims,

because they have been brought under section 1983. See *Verdon v. Consolidated Rail Corp.*, 828 F.Supp. 1129, 1136 (S.D.N.Y.1993); *Malley v. Fernandez*, No. 91 Civ. 5635, 1992 WL 204359, at *3 (S.D.N.Y. Aug.10, 1992), *aff'd without opinion*, 992 F.2d 320 (2d Cir.1993); *Lombard v. Board of Educ.*, 784 F.Supp. 1029, 1035 (E.D.N.Y.1992).

'existing rules or understandings that stem from an independent source such as state law . . . that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* at 212 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

It well-established under New York law that a landowner has no constitutionally protected interest in a particular zoning classification. *See, e.g., Ellentuck v. Klein,* 570 F.2d 414, 429 (2d Cir.1978); *McGowan v. Cohalan,* 41 N.Y.2d 434, 438, 393 N.Y.S.2d 376, 379, 361 N.E.2d 1025 (1977) (citing *Rodgers v. Village of Tarrytown,* 302 N.Y. 115, 121, 96 N.E.2d 731 (1951)). Thus, plaintiffs cannot state a substantive due process claim for defendants' failure to grant their re-zoning application. This is true, even if, as plaintiffs assert, the Town employees mishandled it. *See Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 60 (2d Cir.1985) ("Since plaintiffs were not entitled . . . to the ZBA certificate of location approval . . . and there is no allegation that but for the ZBA members' alleged misconduct the ZBA would have been required to award them the requested certificate, they lack any property interest protected under the Due Process Clause."); *Cedarwood Land Planning v. Town of Schodack,* 954 F.Supp. 513, 523 (N.D.N.Y.1997) (plaintiff could not state due process claim for town's delay in denying variance application, where town had discretion to deny it).

Moreover, the claim that defendants failed "to go forward" with Frooks' re-zoning application is not actionable as a matter of state law. In New York, a town board has broad authority to determine the manner in which it will consider applications for re-zoning. *See* 61 N.Y. Town Law § 264 (McKinney's 1987 & Supp.1998) ("The town board shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed."). A town board's discretion is so great that it need not "act on each and every application for a zoning change." *Matter of Society of N.Y. Hosp. v. Del Vecchio,* 123

A.D.2d 384, 387–88, 506 N.Y.S.2d 596, 598–99 (2d Dep't 1986), *aff'd on other grounds,* 70 N.Y.2d 634, 636, 518 N.Y.S.2d 781, 782, 512 N.E.2d 302 (1987). *See also* N.Y. Town Law § 280 (formerly § 281) (empowering town board "to authorize [a] planning board . . . to modify applicable provisions of zoning ordinance[s], subject to . . . reasonable conditions the town board may in its discretion add thereto") (emphasis added). Given the Town Board's discretion to decline even to entertain Frooks' application for re-zoning, plaintiffs' have no constitutionally protected property interest in Frooks' application. It is therefore irrelevant whether Town employees told him that the zoning change was likely or that such applications were frequently granted. *See RRI Realty Corp.,* 870 F.2d at 918–19 ("[e]ven if in a particular case . . . the probability of . . . approval was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest"). Accordingly, this claim is dismissed. *Accord Dean Tarry Corp. v. Friedlander,* 826 F.2d 210, 213 (2d Cir.1987) (dismissing complaint because planning board "possessed wide discretion" to reject plaintiff's site plan); *Orange Lake Assoc., Inc. v. Kirkpatrick,* 825 F.Supp. 1169, 1178 (S.D.N.Y.) (plaintiff had no property interest in development application because of planning board's discretion to reject it), *aff'd,* 21 F.3d 1214 (2d Cir.1994).

### 2. *Certificate of Occupancy*

Next, plaintiffs allege that they had a vested property interest in the certificate of occupancy issued under the Construction Code, and that their substantive due process rights were violated when the certificate was wrongfully revoked by defendants. Under New York law, a vested right in a certificate of occupancy may arise where "a landowner demonstrates a commitment to the purpose for which the [certificate] was granted by effecting substantial changes and incurring substantial expense to further the development." *See Town of Orangetown v. Magee,* 88 N.Y.2d 41, 643 N.Y.S.2d 21, 24, 665 N.E.2d 1061 (1996) (building permit). However, neither the issuance of the certificate,

nor the landowner's substantial changes and expenditures, standing alone, will establish a vested right. *Id.*, 643 N.Y.S.2d at 24–25, 665 N.E.2d at 1063–64. The landowner's reliance on the certificate must have been so substantial that the municipal action "results in serious loss rendering the improvements essentially valueless." *Id.*, 643 N.Y.S.2d at 25, 665 N.E.2d at 1065.

■ Applying these standards, the Court concludes that plaintiffs have failed to allege a property interest in the 1981 certificate of occupancy. Indeed, plaintiffs nowhere allege, or even mention, any improvements made under the 1981 certificate that have become "valueless." Nor do plaintiffs state any loss, aside from unsubstantiated allegations in the Complaint, that the alleged revocation of the certificate has resulted in "five million dollars" in damages. Such allegations, standing alone, will not suffice on a motion for summary judgment. *See, e.g., In re Steam Heat, Inc. v. Silva*, 230 A.D.2d 800, 646 N.Y.S.2d 537, 540 (2d Dep't 1996) (affirming dismissal of case where alleged improvements were "impermanent . . . rudimentary . . . and inexpensive"). *Cf. Town of Orangetown*, 643 N.Y.S.2d at 24, 665 N.E.2d 1061 (vested right where landowner demonstrated that he had spent $3 million constructing 184,000 square foot building and over $4 million in improvements when work was halted); *Ellington Constr. Corp. v. Zoning Bd. of Appeals of the Incorporated Village of Hempstead*, 77 N.Y.2d 114, 119, 122, 566 N.E.2d 128, 130, 132, 564 N.Y.S.2d 1001, 1003, 1005 (1990) (same, where landowner had made substantial expenditures on land that was irrevocably granted to town in reliance on earlier ordinance).

■ Even if plaintiffs' had a vested right in the 1981 certificate, they do not provide evidence that the Code section requiring a new certificate of occupancy was irrationally applied. Aside from the bald assertions made in the Complaint, there is no evidence regarding the 1981 certificate but only as to the 1991 certificate that was allegedly wrongfully withheld. In fact, the evidence suggests that Frooks was required to obtain a new certificate of occupancy because John Hamilton, Town Fire Marshall and Assistant Building Inspector, had observed construction debris, along with an open floor, on the premises. Given this evidence, which is undisputed, a trier of fact could not find that it was unreasonable for Hamilton to believe that a new certificate of occupancy was needed. *See* Cortlandt Code § 19–2C(1)(a) (new certificate of occupancy "shall be obtained" for "[o]ccupancy and use of [existing] building . . . structurally altered"). For these reasons, the Court concludes that plaintiffs have not stated a constitutionally protected property interest in the 1981 certificate. *Cf. Brady*, 863 F.2d at 215–16 (if town "had no authority . . . to revoke . . . building permit, to demand that [plaintiff] apply for . . . certificates of occupancy, and to subject him to the overall approval process, then a trier of fact could conclude that there was no 'rational basis' for the [town's] actions"). Accordingly, this claim is dismissed.

■ Plaintiffs also allege that their due process rights were violated when defendants withheld the 1991 certificate of occupancy. This claim must also fail. At the time defendants' withheld this certificate, Town employees were required to direct a landowner to apply for a new certificate when they believed that a building was being structurally altered. *See id.* As previously stated, when plaintiffs were ordered to apply for a new certificate under the Code, it is undisputed that Hamilton believed that the premises were being structurally altered.

Moreover, Frooks cannot claim that he was constitutionally deprived of the 1991 certificate of occupancy, because he cannot allege that he had met all of the regulatory requirements for receiving the certificate when the alleged deprivation occurred. *See Sullivan*, 805 F.2d at 85; *Deepwells Estates, Inc. v. Incorporated Village of Head of Harbor*, 973 F.Supp. 338, 349 (E.D.N.Y.1997). It was not until Frooks produced a valid certificate of compliance from the Fire Underwriters that the Town was required to issue him a certificate of occupancy. *See* Pl.'s Ex. 2 at 2; Cortlandt Code §§ 19–2C(3), 19–3D.

Because plaintiffs lack a cognizable property interest in the certificate of occupancy, this claim is dismissed.

### 3. Cabaret Licenses

Plaintiffs also allege a property interest in the various cabaret licenses, for which their tenants applied. Defendants maintain that plaintiffs lack standing to raise any claims regarding the cabaret licenses, because they did not personally apply for them. Because this is a jurisdictional defense, the Court will consider it first. *See Santos v. Dist. Council of New York City*, 547 F.2d 197, 199 (2d Cir.1977).

To satisfy the constitutional requirement of standing, a plaintiff must demonstrate (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) the "likel[ihood], as opposed to mere[ ] speculati[on], that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To show an injury in fact, a plaintiff must claim "an invasion of a legally protected interest which is: (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.*, 504 U.S. at 560.

While it is undisputed that plaintiffs did not apply for any of the cabaret licenses at issue, plaintiffs claim that they had to make certain rental concessions, in order to lease the space as a bar/disco, because the tenants were required to install a sprinkler system. Here, plaintiffs do not merely "rest [their] claim to relief on the legal rights or interests of third parties," *Bluebird Partners v. First Fidelity Bank, N.A.*, 85 F.3d 970, 973 (2d Cir.1996), they allege that they lost rent, due to the Cabaret Law's licensing requirements. However, it has been conclusively held that the mere loss of rental income is insufficient to confer standing on a landlord. *E.g., Lieberthal v. North Country Lanes*, 221 F.Supp. 685, 690 (S.D.N.Y.1963), *aff'd*, 332 F.2d 269 (2d Cir.1964). Moreover, plaintiffs' additional allegations, that Frooks assisted his tenants in applying for their licenses, are insufficient to confer standing. *See Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 234 (N.D.N.Y.1991) (declining to reach due process claim where plaintiffs had not "signed" or "submitted" permit application). *Cf. DiBonaventura v.*

*Zoning Bd. of Appeals of the Town of Thompson*, 24 Conn.App. 369, 588 A.2d 244, 247 (1991) (landowner had standing to challenge denial of license, even though he was not listed on application, because he had been "introduced to the Board as [one of] the applicants"). Because plaintiffs lack standing, their due process claim is dismissed with respect to the cabaret licenses.

### B. *Denial of Procedural Due Process*

"The deprivation of a procedural right to be heard is not actionable when there is no protected right at stake." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994). *See also RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201–02 (2d Cir.1987) ("if state law makes the pertinent official act discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection"). Because plaintiffs have failed to state a property interest in any of the above discussed land use privileges, they cannot maintain their claims for the violation of procedural due process. *RR Village Ass'n, Inc.*, 826 F.2d at 1201–02; *Yale Auto Parts, Inc.*, 758 F.2d at 60. Accordingly, these claims are dismissed.

### C. *Taking Without Just Compensation*

Plaintiffs assert that the denial or withholding of the rezoning application and the certificates of occupancy constituted a constitutionally impermissible taking. To state a takings claim under section 1983, a plaintiff must show (1) a property interest (2) that has been taken under color of state law (3) without just compensation. *HBP Assoc. v. Marsh*, 893 F.Supp. 271, 277 (S.D.N.Y. 1995). Moreover, a "taking" is not "without just compensation" under section 1983 unless a plaintiff has exhausted all state remedies that may provide just compensation. *Id.* (citing *Williamson County v. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). *See also Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir.1995) ("[c]ompensation must first be sought from the state if adequate procedures are available") (citation omitted), *cert. denied*, ——

U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996)). New York has established a procedure for pursuing just compensation, EDPL 101 *et seq.*, that meets all constitutional requirements. *HBP Assoc.*, 893 F.Supp. at 277; *Kohlasch v. New York State Thruway Auth.*, 482 F.Supp. 721, 724 (S.D.N.Y.1980).

▇▇▇▇ Because plaintiffs did not have a constitutionally protected property interest in the zoning change or the certificates of occupancy, the denial or withholding of these privileges was not a taking under section 1983. Even if it were a taking, plaintiffs could not bring a claim for just compensation in federal court, because they have not yet pursued their claim in state court nor shown that New York's "inverse condemnation procedure is unavailable or inadequate." *Williamson*, 473 U.S. at 196–97. *See also Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996) (Article 78 proceeding is "perfectly adequate postdeprivation remedy in [ ] situations" involving property interests). Their takings claim is therefore premature. *HBP Assoc.*, 893 F.Supp. at 278; *Krmencik v. Town of Plattekill*, No. 83 Civ. 638, 1989 WL 114307, at *2 (N.D.N.Y. Aug.25, 1989), *aff'd without opinion*, 946 F.2d 882 (2d Cir.1991). Accordingly, this claim is dismissed without prejudice.

### D. *Denial of Equal Protection*

▇▇▇▇ Plaintiffs also claim that in denying or withholding the zoning change and the certificates of occupancy, defendants deprived them of the equal protection of the laws, in violation of the Fourteenth Amendment and section 1983. The Equal Protection Clause of the Fourteenth Amendment "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiffs equal protection challenge "is not a challenge to the Town Code—it is a claim of 'selective enforcement' of the Town Code." *Zahra*, 48 F.3d at 683. To state a claim for selective enforcement, a plaintiff must establish that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective

treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights or by maliciousness or bad faith to injure the person." *Id.* (citing *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

▇▇▇▇ Plaintiffs claim that they were discriminated against as members of a class of "developers" or "commercial landowners." It is undisputed that these classifications are not suspect. Nor are land use rights fundamental. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 7, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). *See also Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir.1994) ("Zoning and land use issues do not implicate fundamental rights."). Thus, defendants may defeat the claim by showing that the denial or withholding of the land use privileges was rationally related to a legitimate governmental objective. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Rivervale Realty Co. v. Town of Orangetown*, 816 F.Supp. 937, 947 (S.D.N.Y.1993). With respect to the zoning change, the Town has stated that Frooks' application was denied because Frooks failed to address certain issues in the DEIS. As a matter of law, the Town had a legitimate interest in assuring the protection of its natural resources under SEQRA. *See Orange Lake Assoc.*, 21 F.3d at 1215. With regard to the certificates of occupancy, the Town claims to have withheld these privileges, because to do otherwise would jeopardize the public's health, safety and welfare. These are legitimate state concerns. *Cf. Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 924 F.Supp. 385, 396 (E.D.N.Y.1996) (dismissing equal protection claim where village had cited public health and safety issues when denying plaintiff's permit application).

Here, plaintiffs have failed to state an equal protection claim. Aside from the bald assertions contained in Frooks' affirmation, they offer no admissible evidence to suggest that they were treated differently from any other developer, or property owner, in the Town. Therefore, plaintiffs cannot maintain

this claim. *Cf. ABC Home Furnishings, Inc. v. Town of East Hampton,* 964 F.Supp. 697, 702 (E.D.N.Y.1997) (upholding equal protection claim on 12(b)(6) motion where plaintiff had pled specific examples of other entities having been granted permit to hold similar events at same location). Accordingly, this claim is dismissed.

### E. *Violation of First Amendment Rights*

Plaintiffs also contend that defendants violated their First Amendment rights. As the Court understands the Complaint, plaintiffs' claim is twofold. First, plaintiffs allege that defendants retaliated against Frooks by denying his re-zoning application, because he had complained to Town and State officials about the withholding of the 1991 certificate of occupancy and questioned the validity of the Cabaret Law in state court. Second, plaintiffs claim that defendants obstructed their ability to petition the government for grievances, in violation of their right to free speech. The Court considers these claims in turn.

#### 1. *Retaliation Claim*

To state a claim for retaliation under section 1983, a plaintiff must show that (1) his conduct was protected by the First Amendment, and (2) "defendants' conduct was motivated by or substantially caused by his exercise of free speech." *Gagliardi,* 18 F.3d at 194 (internal citation omitted).

Plaintiffs claim that Frooks complained to various public officials and sought administrative and judicial relief, after the Town denied the cabaret licenses and withheld the 1991 certificate of occupancy. It is undisputed that Frooks visited and wrote defendant Nyberg, Director of Code Enforcement, and phoned and wrote Jack Gaffney, Town Supervisor, to complain about the withholding of the certificate of occupancy, in or around May, 1990. *See, e.g.,* Pl's Ex. 5 at 6; D.'s Ex. V. Plaintiffs then appealed the withholding of the certificate to the Secretary of State on March 5, 1991. Additionally, plaintiffs filed an Article 78 proceeding challenging the validity of the Cabaret Law in June, 1992. This conduct is clearly protected by the First Amendment. *See Gagliardi,* 18 F.3d at 194.

However, to state a claim for retaliation, a plaintiff must not only plead a protected activity, he or she must show that the defendant caused harm to the plaintiffs, in substantial part because of the activity. Here, plaintiffs offer a letter from Charles DeFeo, Frooks' engineer, dated July 24, 1991, to Frooks stating the following: "Mr. Nyberg noted that your complaints to the State, concerning the Town's actions, were making Town officials angry, and that your application to the Town for a shopping center would suffer and probably be denied because of this." Pl.'s Ex. 9. DeFeo further states that the purpose of the letter is to "document" the "comment" at Frooks' "request." Plaintiffs do not offer the affidavit or deposition of DeFeo in their papers.

The Court is constrained to dismiss plaintiffs' retaliation claim. Although plaintiffs' allegations may be sufficient to survive a motion to dismiss, *see Gagliardi,* 18 F.3d at 194, the lone, unsworn statement written by DeFeo, at Frooks' request, for the purpose of memorialization, is not enough to defeat defendants' motion for summary judgment. Plaintiffs' burden was to submit admissible evidence suggesting that retaliation occurred. *See Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995). DeFeo's letter is inadmissible hearsay. Therefore, plaintiffs have failed to meet their burden. *See United States v. 143–147 East 23rd Street,* 77 F.3d 648, 657 (2d Cir.1996) (submission of unsworn letter was "inappropriate response to ... motion for summary judgment"); *Beyah v. Coughlin,* 789 F.2d 986, 989–990 (2d Cir.1986) (trial court erred in considering unsworn letters by third parties on motion for summary judgment). Accordingly, plaintiffs' retaliation claim must be dismissed.

#### 2. *Grievance Claim*

Plaintiffs also claim that defendants' violated their First Amendment rights by failing to allow them to petition for grievances. This claim is entirely unfounded. It is beyond dispute that plaintiffs' brought an Article 78 proceeding to invalidate the Cabaret Law, by which sections of the law were struck down and others, repealed by the Town, and when plaintiffs appealed the withholding of the cer-

tificate of occupancy, the Town issued it immediately thereafter. Accordingly, the Court dismisses this claim.

### F. *False Arrest*

Plaintiff Frooks claims that he was falsely arrested when Town employees issued him an appearance ticket for allegedly violating the April 4, 1990 stop work order. This claim must be dismissed, because it is barred by the statute of limitations.

A section 1983 claim for false arrest has a limitations period of three years. *See Eagleston v. Guido,* 41 F.3d 865, 870 (2d Cir.1994); *Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994); *Covington v. City of New York,* No. 94 Civ. 4234, 1997 WL 370628, at *2 (S.D.N.Y. Jul. 1, 1997). Frooks alleges that he was falsely arrested on May 18, 1990, when he was issued an appearance ticket based on "materially false reports." Frooks did not bring the instant action until October 25, 1993, more than three years after this claim arose. Therefore, his claim for false arrest is barred by the statute of limitations and is dismissed.

### G. *Abuse of Process*

Plaintiffs also bring an abuse of process claim in connection with the issuance of the appearance ticket. Like Frooks' false arrest claim, his claim for abuse of process is barred by the statute of limitations. *See Ferran v. Town of Grafton,* 979 F.Supp. 944, 947 (N.D.N.Y.1997) (statute of limitations for abuse of process is three years); *Duamutef v. Morris,* 956 F.Supp. 1112, 1118–9 (S.D.N.Y.1997) (same); *Heinfling v. Colapinto,* 946 F.Supp. 260, 265 (S.D.N.Y.1996) (one year). Frooks was issued the appearance ticket in April, 1990, and the charges were dismissed in July, 1990. However, Frooks did not bring this claim until October, 1993, more than three years later. Accordingly, this claim must be dismissed.

### H. *Malicious Prosecution*

Additionally, plaintiffs bring a malicious prosecution claim in connection with the appearance ticket. Plaintiff Frooks claims that he was maliciously prosecuted by the defendants when they issued him a ticket and dropped the charges without prejudice several months later. Because this claim is also barred by the statute of limitations, it is also dismissed.

The statute of limitations for malicious prosecution is three years. *See Murphy v. Lynn,* 53 F.3d 547, 548 (2d Cir.1995), *cert. denied,* —— U.S. ——, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *Crespo v. New York City Police Commissioner,* 930 F.Supp. 109, 117 (S.D.N.Y.1996). A malicious prosecution claim accrues when the prosecution is terminated. *Murphy,* 53 F.3d at 548. Since the Town dismissed the charges against Frooks in July, 1990, and the Complaint was not filed until October, 1993, any claim for malicious prosecution is time barred and must therefore be dismissed.

### I. *Defamation*

Plaintiffs bring a claim for defamation against defendant Vincent Nyberg, former Director of Code Enforcement, now deceased, based on statements that Nyberg allegedly made concerning Frooks in April and November, 1990. According to the Complaint, in early April, 1990, Nyberg told Frooks' tenants that Frooks "doesn't care about [his tenants]" and that he "took the last tenant for a ride." Cplt. at ¶ 105. Furthermore, the Complaint alleges that on November 5, 1990, Nyberg referred to Frooks as "a prick," "a real shrewdy," and "a smart ass." *Id.* at ¶ 105. Plaintiff Frooks claims damage to his reputation based on these statements.

The Court dismisses plaintiffs' defamation claim, because it is not actionable under section 1983. "Defamation by itself, is a tort actionable under the laws of most states, but not as a constitutional deprivation." *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). For a defamation claim to be actionable under section 1983, the plaintiff's liberty interest must be implicated. *See Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Therefore, where a plaintiff claims injury solely to his reputation, there can be no liability under section 1983. *See*

**456**

*id. See also Valmonte v. Bane,* 18 F.3d 992, 1001 (2d Cir.1994) (the "deleterious effects which flow directly from a sullied reputation," such as "the impact ... on job prospects ..., romantic aspirations, friendships, self-esteem" are insufficient to state a claim under section 1983).

Because plaintiffs have only alleged damage to Frooks' reputation, their allegations are insufficient as a matter of law. Accordingly, their defamation claim is dismissed.

### J. Qualified Immunity Defense

The Court need not reach the merits of defendants' qualified immunity defense with respect to plaintiffs' section 1983 claims, because they fail to state a claim under that provision. *See Siegert,* 500 U.S. at 233 (no need to consider immunity defense where plaintiff failed to establish constitutional violation, stating that "[t]his [is] the desirab[le] ... approach"). *See also Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (Because appellants failed to show deprivation of rights under section 1983, "it is not necessary ... to decide ... question [of] immunity").

### III. Section 1985 Claim

Plaintiffs bring a claim under section 1985, alleging that the Town employees conspired to violate their constitutional rights. Section 1985 provides a cause of action to redress, *inter alia,* injury resulting from a conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

 The Court dismisses this claim for two reasons. First, to state a claim under section 1985, a plaintiff must allege a conspiracy among a plurality of actors, because "the defining element of a conspiracy—a plurality of actors committed to a common goal—is not satisfied by joint action.... of a single entity." *See Tavolini v. Mt. Sinai Med. Ctr.,* 984 F.Supp. 196, 205 (S.D.N.Y. 1997). Thus, as a matter of law, plaintiffs do not state a claim for "conspiracy" under section 1985, because they merely allege that a single entity—the Town—conspired with its

employees to violate their constitutional rights. Accord *Huntemann v. City of Yonkers,* No. 95 Civ. 1276, 1997 WL 527880, at *14 (S.D.N.Y. Aug. 25, 1997) (dismissing claim against municipality and municipal employees, because plaintiff did not "plead participation by third parties"). For this reason alone, plaintiffs' section 1985 claim must be dismissed.

 Second, plaintiffs do not claim that the conspiracy was the result of "some racial, or ... otherwise ... invidious[ ] discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). To state a claim under section 1985(3), a plaintiff must allege an "insidious discriminatory motive." *Gagliardi,* 18 F.3d at 194 (citing *Griffin,* 403 U.S. at 102). Here, plaintiffs state that they were discriminated against because they belonged to a class of "developers" or "commercial landowners." This will not suffice. For this reason as well, plaintiffs' section 1985 claim must be dismissed.

Because plaintiffs do not state a claim for conspiracy under section 1985, we hold that the Town employees are protected by qualified immunity, and therefore dismiss this claim as to them. *See Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir.1997) (determining that qualified immunity shielded defendants, upon concluding that plaintiffs' failed to state claim under section 1985(3)). *See also Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 556 & n. 30 (holding that defendant had qualified immunity under section 1985(3) claim where underlying claim failed as a matter of law).

### IV. Section 1986 Claim

 A viable section 1985 claim is a necessary prerequisite to maintaining a claim under 42 U.S.C. § 1986. *See Gagliardi,* 18 F.3d at 194; *Dwares v. City of New York,* 985 F.2d 94, 101 (2d Cir.1993) Because plaintiffs' do not state a claim under section 1985, we dismiss plaintiffs' section 1986 claim.

### V. Section 1961 Claim

#### A. Municipal and Official Liability

 Plaintiffs also seek to hold the Town defendants liable for conspiracy under RICO.

As a preliminary matter, we note that every court in this Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality. *See Lazzarino v. Kenton Assoc., Ltd.,* No. 96 Civ. 7842, 1997 WL 214938, at *2 (S.D.N.Y. April 29, 1997); *Rini v. Zwirn,* 886 F.Supp. 270, 294–95 (E.D.N.Y.1995); *Nu–Life Construction Corp. v. Bd. of Educ. of the City of New York,* 779 F.Supp. 248, 251 (E.D.N.Y.1991) *O & K Trojan, Inc. v. Municipal & Contractors Equip. Corp.,* 751 F.Supp. 431, 434 (S.D.N.Y. 1990); *Jade Aircraft Sales, Inc. v. City of Bridgeport,* No. Civ. B–83–454, 1990 WL 128573, at *1 (D.Conn. July 9, 1990); *In re Citisource Sec. Lit.,* 694 F.Supp. 1069, 1079–80 (S.D.N.Y.1988); *Cullen v. Margiotta,* No. 76 Civ. 2247, slip. op. at 11 (E.D.N.Y. Aug. 31, 1987) (Mishler, J.). *See also North Star Contracting v. Long Island R.R.,* 723 F.Supp. 902, 908 (E.D.N.Y.1989) (same, with respect to public benefit corporation). Courts of Appeal in other circuits have come to the same conclusion.[5] *See Pedrina v. Chun,* 97 F.3d 1296, 1300 (9th Cir.1996) (rejecting as a matter of law RICO claim against defendant city), *cert. denied,* — U.S. ——, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1997); *Lancaster Community Hosp. v. Antelope Valley Hosp.,* 940 F.2d 397, 404 (9th Cir. 1991) (same, with respect to public hospital). *Cf. Genty v. Resolution Trust Corp.,* 937 F.2d 899, 908–14 (3d Cir.1991) (dismissing RICO claim against municipality, reasoning that treble damages mandated by 18 U.S.C. § 1964(c) are punitive, and therefore cannot be imposed upon municipalities, which have been historically immune from exemplary damages). *See also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 261–62, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (suggesting that municipalities are incapable of committing malicious or criminal acts). So do we. While a municipality is undoubtedly a "person" within the meaning of 18 U.S.C. § 1961(3), it is incapable of forming the req-uisite criminal intent for RICO liability. Accordingly, the RICO claim against the Town is dismissed.

Moreover, because the Town cannot be held liable under RICO as a matter of law, neither may the Town employees in their official capacities. *E.g., Rini,* 886 F.Supp. at 295. Accordingly, we dismiss the RICO claim against the Town employees in their official capacities.

### B. *Individual Liability*

Furthermore, the Court concludes that the Town employees cannot be held liable in their individual capacities under RICO, because plaintiffs have failed to state a claim against them. To state a claim under section 1962, a plaintiff must show (1) that the defendant, (2) through the commission of two or more acts, (3) constituting a pattern, (4) of racketeering activity, (5) directly or indirectly participates in, (6) an enterprise, (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley,* 719 F.2d 5, 17 (2d Cir.1983).[6] Plaintiffs attempt to show that defendants have engaged in mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343, and extortionist threats, in violation of 18 U.S.C. § 1951. For the following reasons, plaintiffs have failed to state a predicate act under section 1962, and thus their claims against defendants in their individual capacities must be dismissed.

### 1. *Mail and Wire Fraud*

Plaintiffs do not state a claim for mail or wire fraud, because they have not pled a predicate act with specificity. Fed. R.Civ.P. 9(b) requires that a plaintiff state "with particularity" "the circumstances constituting fraud or mistake" "in all averments of fraud or mistake." In a mail or wire fraud case, a plaintiff must plead the "time, place, speaker and content of the alleged fraudulent misrepresentations," and specify the manner

---

5. The Court of Appeals for the Second Circuit has not yet reached this issue. *Cf. Jund v. Town Hempstead,* 941 F.2d 1271, 1276 (2d Cir.1991); *Cullen v. Margiotta,* 811 F.2d 698. 728–32 (2d Cir.1987).

6. To the extent that *Moss* reflects an earlier understanding of what constitutes a pattern of racketeering activity, it has been superseded by later case law. *See, e.g., United States v. Indelicato,* 865 F.2d 1370, 1375 (2d Cir.1989) (en banc).

in which the communications were fraudulent or contributed to a fraudulent scheme. *Browning Avenue Realty Corp. v. Rosenshein*, 774 F.Supp. 129, 137 (S.D.N.Y.1991) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986)). "[C]onclusory allegations that ... conduct was fraudulent or deceptive are insufficient to satisfy [Rule] 9(b)." *Id.* The facts alleged "must support an inference of fraudulent intent." *Id.* (citing *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.1988)). *See also Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972) ("the mere assertion that wrongful statements were made, without more, is wholly insufficient to support a claim of fraud").

■ While plaintiffs allege that the Town employees have made numerous false communications, the Complaint does not allege that any particular communication was made with fraudulent intent. Moreover, plaintiffs fail to set forth the manner in which the communications were fraudulent or furthered a fraudulent scheme. *See, e.g.*, Cplt. ¶¶ 208, 214, 218, 227, 234. Clearly, such allegations are insufficient to state a claim for mail or wire fraud. *See* 28 U.S.C. § 1341; *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F.Supp. 1224, 1231–32 (S.D.N.Y.1996); *Morin v. Trupin*, 711 F.Supp. 97, 105 (S.D.N.Y. 1989).[7]

### 2. *Extortion*

■ Extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951. To state a claim for extortion under section 1951, a plaintiff must show that an official accepted money or property in exchange for a specific exercise of official power. *Evans v. United States*, 504 U.S. 255, 258, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992).

■ Here, it is unclear from the Complaint which defendants have allegedly committed extortion or by what means.

Plaintiffs' extortion claim must therefore be dismissed. *Cf. De Falco v. Dirie*, 923 F.Supp. 473, 479 (S.D.N.Y.1996) (declining to dismiss RICO claim on 12(b)(6) motion where plaintiffs alleged that defendants had extorted "firewood, timber, gravel and sand worth hundreds of thousands of dollars," and one third of their company's stock, and denied or delayed building permits and certificates of occupancy when plaintiffs failed to comply).

Because plaintiffs have failed to state a predicate act under RICO, we dismiss their claim against the Town employees in their individual capacities.

### VI. *State Law Claims*

Having dismissed the federal claims against each of the defendants, the Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367; *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 32 (2d Cir.1994); *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir.1990). Accordingly, these claims are dismissed.

### Conclusion

For the reasons stated above, defendants' motion for summary judgment is granted and plaintiffs' motion for partial summary judgment is denied. The Clerk of the Court is directed to enter judgment in favor of defendants.

SO ORDERED.

---

**7.** Moreover, in alleging that the Town employees committed wire fraud, plaintiffs do not claim that they furthered the allegedly fraudulent scheme through the use of interstate wires. In fact, plaintiffs admit that the communications were made solely within Rockland County, New York. This alone defeats plaintiffs, claim for wire fraud. *See, e.g., Sterling Interiors Group, Inc. v. Haworth*, No. 94 Civ. 9216, 1996 WL 426379, at *9 (S.D.N.Y. July 30, 1996).