Aaron BREWER, Alex Stylianou, Rita Bowman and William Walcott, individually and on behalf of all other similarly situated, Plaintiffs,

v.

VILLAGE OF OLD FIELD, Robert Bell, individually and in his capacity as Old Field constable, Jordana B. Casciano, individually and in her capacity as Old Field clerk, Barbara Dragone, individually and in her capacity as Old Field treasurer, Marianne S. Feller, individually and in her capacity as Old Field clerk, William Finnamore, individually and in his capacity as Old Field constable, William H. Hall, individually and in his capacity as former mayor of Old Field, Leroy Hill, individually and in his capacity as Old Field constable, Helaine Katz, individually and in her capacity as Old Field clerk, Jeffrey T. Kracht, individually and in his capacity as Old Field constable, Ronald La Vita, individually, Philip Morales, individually and in his capacity as Old Field constable, Michael Nastasi, individually and in his capacity as Old Field constable, Walter Rothschild, individually, in his former capacity as Old Field Commissioner of Public Safety, and in his current capacity as Old Field Fire & Special Projects Commissioner, James Simons, individually and in his capacity as Old Field Commissioner of Public Safety, and Cary Staller, individually and in his capacity as Mayor of Old Field, Defendants.

Village of Old Field, Third Party Plaintiff,

v.

New York Municipal Insurance Reciprocal, Third Party Defendant.

No. 00–CV–6072(ADS)(ARL).

United States District Court, E.D. New York.

March 31, 2004.

Scott & Scott, L.L.P. by Jonathan C. Scott, Esq., Melville, NY, for Plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP by Thomas W. Hyland, Esq., New York City, for Defendants.

Fried & Epstein, LLP by John W. Fried, Esq., New York City, for Third–Party Plaintiff.

Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger, P.C. by Rona L. Platt, Esq., Garden City, NY, for Third–Party Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of claims by Aaron Brewer ("Brewer"), Alex Stylianou ("Stylianou"), Rita Bowman ("Bowman") and William Walcott ("Walcott") (collectively, the "plaintiffs"), on behalf of themselves and a class of similarly situated persons, that the defendants the Village of Old Field ("Old Field" or the "Village") and fifteen of its present and former officials and employees (collectively, the "defendants") created a private police force, purportedly cloaked with legitimate public authority, to enforce traffic and other laws and collect fines for alleged violations of those laws through a distinct enterprise. The plaintiffs allege violations of, among other things, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO") and 42 U.S.C. § 1983 ("Section 1983"). Presently before the Court is the defendants' motion to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) and 9(b).

## I. BACKGROUND

At the outset, the Court notes that the second amended complaint (the "Sec. Am. Compl.") contains over 60 pages and is in

excess of 130 paragraphs. This complaint is very similar, except for the names, dates, and several facts, to two other class action complaints filed by the plaintiffs' counsel in this Court. *See Wood v. Incorporated Village of Patchogue of New York, et al.,* No. 01 Civ. 0229 and *Coco v. Incorporated Village of Belle Terre,* No. 01 Civ. 5061.

The facts are taken from the second amended complaint and are taken as true for purposes of this motion.

The plaintiffs allege that on November 4, 1958, the residents of Old Field voted to irrevocably transfer all of Old Field's police functions to Suffolk County (the "County"). The plaintiffs contend that the proper law enforcement agency for Old Field is the Police Department of Suffolk County.

Despite having allegedly transferred all of its police authority to Suffolk County, the defendants created a "scheme purporting to maintain a separate Old Field police force." Sec. Am. Compl. ¶ 41. As part of this alleged "scheme," Old Field employed persons purporting to be village "constables" to perform police functions. These constables allegedly detain and arrest "suspects" under color of law and purport to enforce the New York Vehicle and Traffic Law and Old Field local ordinances.

The plaintiffs allege that the defendants had knowledge and notice that because Old Field had transferred all of its authority to enforce state and local laws to Suffolk County that it was prohibited from enforcing these laws. For example, in 1986 the New York State Police, in conjunction with the Department of Justice (the "Department of Justice"), notified Old Field that its law enforcement agency identification number would be retired because an investigation by the Department of Justice confirmed that the Old Field constabulary was not a valid law-enforcement agency. The second amended complaint states that the identification number is provided only to authorized criminal justice and law-enforcement agencies for the purposes of accessing New York State Police and Federal Bureau of Investigation records.

In addition, upon information and belief, in or about 1988, a motorist who had been detained by the defendants, challenged the authority of Old Field to operate a police force. Other incidents which allegedly provided Old Field with notice that it did not have the authority to enforce state and local laws include: (1) a 1984 decision by the New York Court of Appeals which held that actions by an unauthorized village constabulary were void; (2) a 1990 holding by the Suffolk County Civil Service Department (the "Civil Services Department") that the position of Village Constable was not an authorized civil service position because Old Field was not authorized to maintain a constabulary with law enforcement powers; (3) in or about 1990, then Suffolk County Attorney, E. Thomas Boyle, advised the Village of the problems created by its continuing efforts to maintain a constabulary force; (4) a 1994 determination by the Suffolk County Attorney that the Village of Poquott's designation of constables as peace officers was contrary to local law and controlling court decisions; (5) in a letter dated December 30, 1994, the New York Division of Criminal Justice Services denied Old Field's request to register its constables in the Peace Officer Registry; (6) in a lawsuit filed by Old Field in the Supreme Court, Suffolk County seeking a declaration that the Old Field Constabulary was a duly authorized law enforcement agency, that court denied such relief.

The plaintiffs further allege that the defendants made false representations to the County in order to facilitate payment of the constables through the New York State civil service system. In particular,

Old Field Clerks Jordana Casciano ("Casciano"), Marianne S. Feller ("Feller"), and Helaine Katz ("Katz"); Village Justice Ronald La Vita ("Justice La Vita"); former Mayor Wiliam H. Hall ("Hall"), Mayor Cary Staller ("Staller"); former Commissioner of Public Safety Walter Rothschild ("Rothschild"); and Old Field Commissioner of Public Safety James Simons ("Simons") were personally involved in assigning job functions to the members of the alleged scheme with titles and/or duties outside of those approved by the New York State Civil Services Department (the "Civil Services Department"). For example, after the defendants learned that the position of "village constable" was not a position that was authorized by the Civil Services Department, the defendants changed the Village payroll designations to "code enforcement officer." Sec. Am. Compl. ¶ 70. The defendants allegedly submitted amended "Duties Statements" through the United States mail to the County which detailed the duties for which the Village employees were certified to perform (the "Duties Statement(s)").

The second amended complaint further alleges that contrary to the assertions made in the Duties Statements, the "code enforcement officers" performed law enforcement functions and held themselves out as "constables." *Id.* at ¶ 71. Old Field had its constables sign the Duties Statements which, contrary to the actual activities of the constables, indicated that they worked in "non-law enforcement and non-traffic enforcement" positions. Sec. Am. Compl. ¶ 71. In addition, the complaint alleges that for every year since at least 1990, the defendants submitted payroll documents containing the alleged misleading information. These documents were allegedly submitted by mail.

For example, in 1999, Old Field purported to hire Philip Morales as a "Park Ranger I" even though that position was not approved by the Civil Services Department and Morales had not qualified for the position. Although the County's job description for this position limited it to duties connected with patrolling the parks on foot or in a vehicle, Morales performed law enforcement duties "not authorized by his job description or by law."

In a letter dated on or about July 30, 1998, then Mayor Hall, asked the Civil Services Department if Old Field could require the ability to obtain a personal gun license as a condition of employment as a code enforcement officer. This request was rejected by the County. However, allegedly to "circumvent" the County's denial of Hall's request, the defendants required its individual officers to obtain individual gun permits.

The plaintiffs claim that from 1994 to the date this action was commenced (the "Class Period"), the defendants, which include the village constables, village officials and village clerks, engaged in a scheme

> that is designed to detain individuals traveling through Old Field, issue purported New York traffic tickets, also called "appearance tickets," hold village-court sessions to adjudicate the purported traffic tickets that constituted acts outside the village court's jurisdiction, assess unlawful fines and/or court costs, threaten consequences if the unlawful fines were not paid, and collect unlawful fines and costs, all to the personal benefit of the [d]efendants. (the "Old Field Private Police Force Scheme" or the "Scheme").

Sec. Am. Compl. ¶ 41.

The plaintiffs claim that the Scheme was managed by Justice La Vita, Mayors Staller and Hall, and Chief Constables Jeffrey T. Kracht ("Kracht") and Leroy Hill ("Hill"). Other participants in the scheme include Village Constables Robert Bell ("Bell"), William Finnamore ("Finna-

more"), Michael Nastasi ("Nastasi") and Morales (collectively, the " Village Constables"); and Commissioners of Public Safety Rothschild and Simons (collectively, the "Commissioners"); and Village Clerks Casciano, Katz, and Feller (collectively, the "Village Clerks"); and Village Treasurer Barbara Dragone ("Dragone").

As part of the Scheme, each Village Constable "wore an emblem on a uniform that said 'police' in large letters and 'constable' below it in much smaller letters, even though he was not recognized under New York law as a police officer or otherwise legitimately empowered to enforce any laws." Sec. Am. Compl. ¶¶ 47–50.

## A. As to the Individual Plaintiffs

On March 27, 2000, Stylianou was driving in Old Field when he was detained by Morales for exceeding the posted speed limit. At that time, Morales was driving a vehicle with a flashing red emergency light and held himself out as a police officer. Morales issued a "Uniform Traffic Ticket" (the "Ticket") to Stylianou. The Ticket indicated that it was issued by the State of New York Department of Motor Vehicles. This Ticket ordered the plaintiff to appear in the Old Field Village Court (the "Village Court").

Thereafter, Stylianou received written notices sent through the mail from Village Clerk Feller, which directed him to appear in the Village Court regarding the citation. This notice was accompanied by a document indicated that Stylianou could plead guilty and pay a fine to the "Justice Court, Village of Old Field." This fine also included a "Mandatory NYS Surcharge." After allegedly being threatened that his driving privileges would be taken away, Stylianou entered a plea of guilty and paid a fine under protest.

The Second Amended Complaint alleges similar facts with respect to Brewer, Walcott, and Bowman. Sec. Am. Compl. ¶¶ 76, 77, and 78.

## B. As to the Proposed Class

As stated above, the plaintiffs purport to brings this action on behalf of themselves and a class of similarly situated persons.

The plaintiffs allege that the defendants at all times knew that the Village had irrevocably assigned all of its police authority to Suffolk County. Nevertheless they continued to represent themselves as police officers and wore uniforms, badges, insignia, and other paraphernalia which provided the impression that they were acting with the approval or authority of a legitimate police department. The plaintiffs allege that during the Class Period, the Village Constables issued in excess of 2,500 appearance tickets for vehicle and traffic law violations which were similar to the above mentioned Tickets received by the individual plaintiffs.

In addition, the plaintiff claims that "on thousands of occasions" the Village Clerks and Treasurer Dragone mailed communications and used the wires regarding the citations and/or appearance tickets. Finally, the plaintiff alleges that Justice La Vita adjudicated the hearings and unlawfully collected fines for the alleged violations of the vehicle and traffic law.

The plaintiffs claim that all of the defendants violated 18 U.S.C. §§ 1962(b) and (d), the RICO statute; Casciano, Dragone, Feller, Katz, La Vita, Hall, Rothschild, Simmons, and Staller violated 18 U.S.C. § 1962(c); and all of the defendants violated 42 U.S.C. § 1983 ("Section 1983"). The plaintiff also brings a New York State law cause of action for Money Had and Received against all of the Defendants except for Justice La Vita. Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b).

## II. DISCUSSION

### A. The Standards

#### 1. Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. *See Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (citing *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999)). In its analysis under Rule 12(b)(6), the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Tarshis*, 211 F.3d at 39 (citing *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

#### 2. Rule 9(b)

Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud. The reason for these requirements are three-fold: (1) to provide the defendant with fair notice of the claims against her; (2) to protect the defendant from harm to her reputation or goodwill as a result of unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982). To satisfy the pleading requirements of Rule 9(b), the plaintiff must plead the circumstances of the fraud with particularity and that the defendant acted with fraudulent intent. Fed.R.Civ.P. 9(b).

##### a. Pleading the Circumstances of Fraud

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must, " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). As such, this requires the plaintiff to identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme. *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992).

However, "[i]n cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information." *Calabrese v. CSC Holdings, Inc.*, 2003 WL 22052824, at *6 (E.D.N.Y. Aug. 13, 2003). Under these circumstances, Rule 9(b) "only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the

overall fraudulent scheme." *Id.* (citations omitted); *see also In re Sumitomo Copper Litig.,* 104 F.Supp.2d. 314, 319 (S.D.N.Y. 2000) (quoting *In re Sumitomo,* 995 F.Supp. 451, 456 (S.D.N.Y.1998)).

Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's participation in the fraud. *See DiVittorio,* 822 F.2d at 1247 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). However, "it is not necessary to allege . . . that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Sobel v. Fleck,* No. 03 Civ. 1041, 2003 WL 22839799, at *6 (S.D.N.Y. Dec. 1, 2003) (citing 18 U.S.C. §§ 1341, 1343).

**B. Judicial Immunity**

 The plaintiffs seek declaratory and injunctive relief against Justice La Vita in his individual capacity. With respect to this defendant, the plaintiffs allege that Justice La Vita "acted outside his jurisdiction and/or authority as a village justice," Sec. Am. Compl. ¶ 11, and "over[saw] and manag[ed] the Scheme, recruit[ed] individuals to act as constables and clerks . . . approving the procurement of and/or supplying the equipment, emblems, uniforms, vehicles, and other items used to carry out the extortion. . . ." *Id.* at 92. The plaintiffs attempt to circumvent the "solidly established" doctrine of judicial immunity, *See Alvarez v. Snyder,* 264 A.D.2d 27, 33, 702 N.Y.S.2d 5, 11–12 (1st Dep't 2000), by couching the allegations against Justice La Vita solely with respect to his individual capacity.

This absolute judicial immunity is not overcome by allegations of bad faith or malice, nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles v. Waco,* 502 U.S. 9, 13, 112 S.Ct. 286, 116 L.Ed.2d 9 (quoting *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)). Rather, a judge will be subject to liability "only when he has acted in the clear absence of all jurisdiction." *Stump,* 435 U.S. at 357, 98 S.Ct. 1099 (citation omitted); *see also Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997); *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 352, 20 L.Ed. 646 (1871) (noting that "clear absence of all jurisdiction" would be found if, for example, a probate judge, with jurisdiction over only wills and estates, should try a criminal case. On the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune."). Here, the conclusory nature of the allegations against Justice La Vita are insufficient to sustain a claim against him.

In addition, the proposed declaratory and injunctive relief sought against Justice La Vita does not even relate to his activities. In particular, the plaintiffs seek a declaration that the

> referendum transferring all Old Field's police functions to the Suffolk County police district is binding on Old Field's . . . that Old Field's has no authority to operate a private police force, detain and/or arrest any persons residing in or traveling through Old Field's, or to empower anyone to enforce the New York Vehicle and Traffic Law or Old Field's local ordinances, and that no one employed by or in association with Old Field's has the authority or right to issue New York Uniform Traffic Tickets or Simplified Traffic Informations.

Sec. Am. Compl. ¶ 81. The plaintiffs also request that the defendants be enjoined from "benefitting from their wrongful acts." *See* Sec. Am. Compl. "Prayer" ¶ 3.

398

"[T]o the extent [the plaintiffs'] claims seek injunctive and declaratory relief (against the [Justice] in either [his] official or individual capacit[y] ), the *Rooker–Feldman* doctrine is a barrier." *Tsabbar v. Booth,* 293 F.Supp.2d 328, 335 (S.D.N.Y.2003) (citing *Sundwall v. Leuba,* No. 300 Civ. 1309, 2001 WL 58834, at *6–*7 (D.Conn. Jan. 23, 2001)). Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995), and "federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir.1996).

Accordingly, the causes of action against Justice La Vita are dismissed in their entirety.

## C. Civil RICO

18 U.S.C. § 1964(c) creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." To state a claim for damages based upon a violation of section 1962, a plaintiff must establish that "a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001). Here, the plaintiff asserts three separate causes of action under RICO pursuant to 18 U.S.C. §§ 1962(b), (c), and (d).

### 1. As Against the Village

█ The plaintiff seeks to hold the Village liable under the civil RICO statute. However, "[w]hile a municipality is undoubtedly a 'person' within the meaning of 18 U.S.C. § 1961(3), it is incapable of forming the requisite criminal intent for RICO liability." *Frooks v. Town of Cort-*

*landt,* 997 F.Supp. 438, 457 (S.D.N.Y.1998); *O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp.,* 751 F.Supp. 431, 434 (S.D.N.Y.1990) ("[A] municipal corporation[ ] is incapable of having the criminal intent to support RICO's predicate offense requirement."); *see also Nu-Life Construction Corp. v. Board of Education,* 779 F.Supp. 248, 251 (E.D.N.Y. 1991). "[E]very court in [the Second] Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality." *Frooks,* 997 F.Supp. at 457. ((collecting cases)). Moreover, *mens rea* on the part of the agents of the municipality may not be imputed to the municipality through the doctrine of respondeat superior." *Rini v. Zwirn,* 886 F.Supp. 270, 295 (E.D.N.Y.1995).

The plaintiff argues that the decision of the United States Supreme Court in *Cook County v. United States ex rel. Chandler,* 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003) authorizes RICO actions against municipalities. The Court disagrees. In *Cook County,* the Supreme Court held, among other things, that municipalities are subject to treble damages under the False Claims Act (the "FCA") because the FCA's definition of "person" was intended to cover local governments. However, the Supreme Court did not address the issue of whether a municipality could form the necessary *mens rea* to commit predicate acts in a RICO case. Therefore, the Court will follow the wellsettled law within the Second Circuit and declines to impose civil RICO liability on the Village. Accordingly, the civil RICO claims against the Village are dismissed.

### 2. As Against All of the Defendants in their Official Capacity

Because the Village cannot be held liable in a civil RICO case as a matter of law,

neither may its employees be responsible in their official capacities. *See Frooks,* 997 F.Supp. at 457. Accordingly, to the extent that the defendants are sued in their official capacities, such claims are also dismissed. However, the plaintiff may proceed against the defendants in their individual capacities. *Lathrop v. Juneau & Associates, Inc., P.C.,* 220 F.R.D. 330, 335 (S.D.Ill.2004) ("To assert a claim against an official in his individual capacity, a plaintiff must assert 'that the defendant did something that is something that is tortious independent of the office that the defendant holds.'") (citing *Walker, et al. v. Rowe,* 791 F.2d 507, 508 (7th Cir. 1986) (J. Easterbrook)).

### 3. 18 U.S.C. § 1962(b) Against All of the Defendants.

As stated above, to state a claim for damages based upon a violation of Section 1962, a plaintiff must establish that "a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001). Section 1962(b) states that

> [i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b). For purposes of this cause of action, the plaintiffs define the "enterprise" as the "Old Field Village Court." Sec. Am. Compl. ¶ 85. The plaintiffs allege the following predicate acts: Violation of New York Penal Law ("Penal Law"); Penal Law § 175.35 offering false instruments for filing; Penal Law § 20 Criminal liability for conduct of another;

Penal Law § 190.26 Criminal impersonation in the first degree; and 18 U.S.C. §§ 1341, 1343, and 1951.

■ To state a claim under Section 1962(b), the plaintiffs must make two basic allegations: (1) that the defendants acquired or maintained an interest in the alleged enterprise through a pattern of racketeering activity; and (2) that the plaintiff suffered injury as a result of the acquisition of the enterprise. *See O & G Carriers v. Smith,* 799 F.Supp. 1528, 1543 (S.D.N.Y.1992). The "acquisition or maintenance injury" must be separate and apart from the injury suffered as a result of the predicate acts of racketeering. *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 657 (S.D.N.Y.1996) (citing *Official Publications v. Kable News Co.,* 775 F.Supp. 631, 635 (S.D.N.Y.1991)). "Without a distinct 'acquisition injury,' [a plaintiff] cannot state a cause of action under subsection 1962(b)." *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1062–63 (2d Cir.1996) *rev'd on other grounds,* 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Redtail Leasing, Inc. v. Bellezza,* No. 95 Civ. 5191, 1997 WL 603496, at *3 (S.D.N.Y. Sept. 30, 1997) (the injury must be caused by "acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or the commission of predicate acts."). "Failure to allege such an injury results in dismissal." *United States Fire Ins. Co. v. United Limousine Service, Inc.,* 303 F.Supp.2d 432, 450 (S.D.N.Y.2004).

■ Here, the plaintiffs allege that the "separate and independent" injury is that the class members were *"inter alia,* coerced into being absent from their jobs or schools and incurr[ed] travel expenses and related costs to appear in the Village Justice Court." In the Court's view, these alleged injuries are not separate from those resulting from the predicate acts, namely that the plaintiff plead guilty and

paid a fine for committing an illegal right turn. *Katzman,* 167 F.R.D. at 657. Furthermore, the plaintiffs' claim that the alleged predicate acts caused them to, among other things, be absent from school or employment does not afford a basis for Section 1962(b) liability.

The purpose of Section 1962(b) is "to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." *Mark v. J.I. Racing, Inc., et al.,* No. 01 Civ. 10821, 1997 WL 403179, at *3 (E.D.N.Y.1997) (citation omitted). Because the plaintiffs have not alleged facts to suggest a separate acquisition or maintenance injury, the purposes of section 1962(b) are not furthered. *See United States Fire Ins. Co.,* at 450.

Accordingly, the section 1962(b) claims against the defendants are dismissed and the Court need not determine whether the Old Field Village Court constitutes a section 1962(b) "enterprise."

### 4. 18 U.S.C. § 1962(c) Against Casciano, Dragone, Feller, Katz, La Vita, Hall, Rothschild, Simons and Staller

Section 1962(c) "was intended to prevent the operation of a legitimate business or union through racketeering." *Mark v. J.I. Racing, Inc.,* No. 92 Civ. 5285, 1997 WL 403179, at *3 (E.D.N.Y. July 9, 1997). This section states that

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To state a claim under this section, a plaintiff must allege "(1) conduct (2) of an enterprise (3) though a pattern (4) of rack-

eteering activity." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The elements of this section must be established as to each individual defendant. *DeFalco,* 244 F.3d at 306 (citing *United States v. Persico,* 832 F.2d 705, 714 (2d Cir.1987)). "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." *Id.*

#### a. As to Justice La Vita

As stated above, based on the doctrines of judicial immunity and *Rooker–Feldman,* the claims against Justice La Vita are dismissed in their entirety.

#### b. As to Feller, Casciano, Dragone and Katz

The plaintiff alleges that Village Clerks Feller, Casciano, and Katz and Treasurer Dragone,

on thousands of occasions during the Class Period, maintain[ed] records of purported citations and/or appearance tickets, issuing notices to persons detained by the Old Field Constabulary, using the mails and wires in an attempt unlawful fines, surcharges, and/or court costs imposed on individuals traveling through Old Field by the Old Field Constabulary, and collecting monies on behalf of the Old Field Constabulary. [These defendants] acting outside the scope of the legitimate business of Old Field, on thousands of occasions during the Class period, personally sent our notices to class members based on the issuance of the purported citations and/or appearance tickets . . .

Sec. Am. Compl. ¶ 105.

■ However, "[s]imply because one provides goods or services that ultimately

benefit the enterprise does not mean that one becomes liable as a result." *See La-Salle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1090 (S.D.N.Y.1996) (quoting *University of Md. v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993)); *see also United States Fire Ins. Co.,* at 450 (It is not enough to merely take directions and perform " 'tasks that are necessary and helpful' to the enterprise.") (citing *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) (quotation omitted)). Accordingly, the Section 1962(c) claims against Feller, Casciano, Dragone and Katz are dismissed.

#### c. As to Hall, Rothschild, Simons and Staller

With regard to this cause of action, the plaintiff alleges that Mayors Hall and Staller and Commissioner of Public Safety Rothschild and Simons, among other things,

> participated in and conducted the affairs of the Old Field Constabulary through a pattern of racketeering activity by ... personally overseeing the administration and operation of the Old Field Constabulary, including hiring and equipping the 'constables,' directing, managing, and influencing the efforts of the Old Field Constabulary to enforce New York laws, hiring and providing infrastructure to support the imposition and collection of 'fines' on members of the class, and controlling the financial affairs of the Old Field Constabulary.

Sec. Am. Compl. ¶ 108.

#### i. The Enterprise

To survive a Rule 12(b)(6) motion in a civil RICO section 1962(c) case, the plaintiff must allege the existence of an enterprise which is "separate and distinct from the alleged pattern of racketeering activity." *Black Radio Network, Inc. v. NYNEX Corp.,* 44 F.Supp.2d 565, 580 (S.D.N.Y.1999); *see also United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Thus, "the enterprise must have some sort of existence independent of the commission of the predicate acts." *Mark,* 1997 WL 403179, at *4.

Here, the plaintiff alleges that for purposes of this section, the enterprise is the "Old Field Constabulary (a/k/a the Old Field Police Department or the Old Field Code Enforcement Department)." Sec. Am. Compl. ¶ 103. Although, the plaintiffs do not specifically identify the individuals who comprise this alleged enterprise, the Court will assume that it includes the above mentioned "Village Constables." With respect to this cause of action, the plaintiff indicates that the "Old Field Constabulary is an enterprise distinct from the complained of behavior that can exist separate and apart from that behavior because, even in the absence of that behavior, the Old Field 'constables' could properly be designated as code-enforcement officers to enforce non-traffic local ordinances." *Id.*

The Court notes that this description of the Village Constables appears to contradict the prior allegations that the Village Constabulary was completely unlawful. *See e.g.,* Sec. Am. Compl. ¶ 1 ("[The][p]laintiff seeks injunctive relief to end the [d]efendants' scheme of running an illegal, illegitimate private police force ..."); ¶ 56 ("[the][d]efendants were well aware that Old Field had transferred all authority to enforce state and local laws to Suffolk County and was therefore prohibited from using any mechanism to enforce these laws aside from the Suffolk County Police Department); ¶ 65 ("[T]he Defendants were well aware that their Scheme

was illegal and unauthorized ..."); ¶ 81 ("[The][p]laintiffs requests a declaration ... that Old Field has no authority to operate a police force.").

Nevertheless, " 'in assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering,' it is appropriate to consider whether 'the enterprise would still exist were the predicate acts removed from the equation.' " *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 349 (S.D.N.Y. 1998) (quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir.1997)); *see also Turkette,* 452 U.S. at 583, 101 S.Ct. 2524. Because for purposes of this cause of action the plaintiffs allege that the Old Field Constabulary would exist even if the alleged predicate acts were removed, for purposes of this motion the plaintiff has alleged a section 1962(c) enterprise.

■■■ Although it is well-settled that in a Section 1962(c) claim "the person and the enterprise referred to must be distinct," *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994) (citation omitted), a Section 1962(c) claim may be sustained where there is only a partial overlap between the RICO person and the RICO enterprise. *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989); *see also Riverwoods Chappaqua Corp.,* 30 F.3d at 344. Thus, because a defendant may be a "RICO 'person' and one of a number of members of the RICO 'enterprise,' " *Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.1987) *cert denied* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)Mayors Hall and Staller and Commissioner of Public Safety Rothschild and Simons are sufficiently distinct RICO persons from the RICO enterprise.

### ii. Racketeering Activity

Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law including, among other things, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. The statute requires a plaintiff to plead at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(5).

### Acts under New York State Law

■ The plaintiffs allege the following predicate acts: Violation Penal Law § 175.35 offering false instruments for filing; Penal Law § 20 Criminal liability for conduct of another; and Penal Law § 190.26 Criminal impersonation in the first degree. None of the alleged New York State Penal Law violations constitute a predicate act for purposes of civil RICO liability. Such is the case because "the only state law crimes which constitute predicate acts of racketeering activity under Section 1961 are those acts 'chargeable under State law and punishable by imprisonment for more than one year,' which involve 'murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical.' " *Crown Heights Jewish Community Council, Inc., et al. v. Fischer,* 63 F.Supp.2d 231, 238 (E.D.N.Y.1999) (citing 18 U.S.C. § 1961(1)(a)) *aff'd mem.,* 216 F.3d 1071, 2000 WL 794152 (2d Cir.2000). None of the state law claims enumerated by the plaintiff fall within this definition. *See Crown Heights Jewish Community Council, Inc., et al.,* 63 F.Supp.2d at 238 (New York Penal Law § 175.35 is not a predicate act).

With respect to Penal Law § 190.26, criminal impersonation in the first degree, this crime does not constitute:

> any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(A)(1). Because Penal Law § 190.26 does not constitute any of the enumerated offenses under the RICO statute, this alleged violation cannot serve as a predicate act for purposes of RICO liability.

Moreover, because the plaintiffs failed to set forth a predicate act under State Law, the plaintiffs cannot sustain a predicate act under Penal Law § 20, namely, criminal liability for the conduct of another.

## Mail and Wire Fraud

■■■■ A complaint alleging mail fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing and intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996) (citation omitted). Similarly, the elements of wire fraud are (1) a scheme to defraud and (2) use of interstate wire communication to further that scheme. *See United States v. Lemire,* 720 F.2d 1327 (C.A.D.C.1983) (noting that the requisite elements of wire fraud, 18 U.S.C. § 1343, are identical to those of mail fraud, 18 U.S.C. § 1341). Here, the defendants fail to address the predicate acts of mail and wire fraud.

To establish a violation of Section 1962(c), the plaintiff must allege that each defendant committed at least two predicate acts of racketeering activity. *See De Falco,* 244 F.3d at 306. However, under the mail fraud statute "it is not necessary to allege ... that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Sobel v. Fleck,* 2003 WL 22839799, at *6 (S.D.N.Y. Dec. 1, 2003) (citing 18 U.S.C. §§ 1341, 1343); *see also United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989) ("[I]t is not significant for purposes of the mail fraud statute that a third-party, rather than [the] defendant

wrote and sent the letter at issue, provid[ed] ... the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of [the] defendants' act.").

■■■■ Here, the plaintiffs allege that each of the plaintiffs received mailed written notices directing them to appear in the Village Court regarding their citations. Thus, the complaint alleges a close connection between the defendants and the alleged fraudulent scheme that each of these defendants " 'could reasonably have foreseen that the mail would be used in the ordinary course of business as a result of' their acts." *See Sobel v. Fleck,* 2003 WL 22839799, at *7 (citing *Bortnovsky,* 879 F.2d at 36.).

Although the second amended complaint does not specify how these mailings were fraudulent or misleading,

> [i]n cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves ... In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).

*In re Sumitomo Copper Litigation,* 995 F.Supp. 451, 456 (S.D.N.Y.1998) (citing *Schmuck v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)); *see also Sobel v. Fleck,* 2003 WL 22839799, at *5; *Calabrese v. CSC Holdings, Inc.,* 2003 WL 22052824, at *6 (E.D.N.Y. Aug. 13, 2003) ("In cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information."). Thus, under these circumstances, Rule 9(b) "only re-

quires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme." *Calabrese v. CSC Holdings, Inc.*, 2003 WL 22052824, at *6 (citations omitted).

Accordingly, the defendants' motion to dismiss the Section 1962(c) claims against Hall, Rothschild, Simons and Staller is denied.

### 5. 18 U.S.C. § 1962(d) Against All Defendants

Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of Section 1962(a)-(c). As set forth above, the only remaining claims under the civil RICO statute are the Section 1962(c) causes of action against Hall, Rothschild, Simons and Staller. Therefore, only the Section 1962(d) cause of action relating to the Section 1962(c) causes of action against Hall, Rothschild, Simons and Staller remains. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062–63 (2d Cir.1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present [§ 1962(d) ] claim does not set forth a conspiracy to commit such violations.").

### D. Section 1983 Against All Defendants

The plaintiffs also purport to set forth a Section 1983 cause of action on behalf of all people "who were detained by persons purporting to be Old Field police officers ... from October 10, 1997 to the present day." Sec. Am. Compl. ¶ 122. The plaintiffs further allege that "the [d]efendants" among other things: (1) "act[ed] illegally under color of state law to deprive [the plaintiffs] ... their rights under the Fourteenth Amendment," Sec. Am. Compl. ¶ 123; (2) "deprived [the plaintiffs] ... property rights and liberty interests without due process," *id.* at 124; (3) "negligently hired and employed individuals pur-

porting to be law enforcement officers who are inadequately trained ...," Sec. Am. Compl. ¶ 126; and (4) "act[ed] in willful disregard of or acting with deliberate indifference to clearly established constitutional rights...." Sec. Am. Compl. ¶ 127.

The plaintiffs' section 1983 cause of action must be dismissed for, among other reasons, the following: (1) the complaint is "fatally defective on its face" because it fails to allege any personal involvement by the defendants, *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977) (it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); (2) negligence is not a valid basis for liability under 42 U.S.C. § 1983, *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("[T]he Due Process clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)); and (3) these allegations fail to comply with Fed. R. Civ P. 8. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." (citations omitted)); *see also* Fed.R.Civ.P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief....").

█ Here, the plaintiffs failed, among other things, to indicate the specific people who allegedly violated the plaintiffs' rights, how due process was allegedly denied, and the specific injury that was allegedly suffered. Accordingly, the plaintiffs' Section 1983 claims are dismissed.

**E. The New York State Law Cause of Action for Money Had and Received Against All Defendants**

As set forth above, the only federal law causes of action remaining in this action, are the Section 1962(c) claims against Hall, Rothschild, Simons and Staller. Having dismissed the plaintiffs' federal claims against all of the defendants except for those against Hall, Rothschild, Simons and Staller, the Court will also dismiss the New York state law claims for money had and received against all of the defendants except for those Hall, Rothschild, Simons and Staller. *See Arroyo v. City of New York*, No. 99 Civ. 1458, 2003 WL 22211500, at *3 (E.D.N.Y. Sept. 25, 2003) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *see also Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002) ("[w]hen federal claims are dismissed early in the litigation—for example, before trial on a summary judgment motion—dismissal of state law claim[s] ... is appropriate.") (citing *Cobbs v. CBS Broadcasting, Inc.*, 97 Civ. 8284, 1999 WL 244099, at *3 (S.D.N.Y. April 26, 1999)).

However, in light of the fact that the Court has jurisdiction over the plaintiff's Section 1962(c) and (d) claims against Hall, Rothschild, Simons and Staller the Court will exercise supplemental jurisdiction over the state law claim for money had and received against these defendants.

A cause of action for "monies had and received" is an equitable claim similar in theory to unjust enrichment. It has been described as "an obligation which the law creates in the absence of an agreement when one party possesses money that in equity and good conscience should not be retained and which belongs to another." *Bd. of Educ. of Cold Spring Harbor v. Rettaliata*, 164 A.D.2d 900, 901, 559 N.Y.S.2d 758 (2d Dep't 1990), remanded on other grounds, 181 A.D.2d 648, 581 N.Y.S.2d 1007 (2d Dep't 1992); *Interior by Mussa, Ltd. v. Town of Huntington*, 174 Misc.2d 308, 311, 664 N.Y.S.2d 970–972 (1997).

A claim for monies had and received in New York is considered either a "quasi-contract or [a] contract implied-in-law." *Bd. of Educ. of Cold Spring Harbor Cent. Sch. Dist.*, 78 N.Y.2d 128, 138, 572 N.Y.S.2d 885, 888, 576 N.E.2d 716 (1991) (*citing State v. Barclays Bank of New York, N.A.*, 76 N.Y.2d 533, 540, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990)). Such a claim is recognized as follows:

> [I]n the absence of an agreement when one party possesses money that in equity and good conscience [it] ought not to retain and that belongs to another. It allows [a] plaintiff to recover money which has come into the hands of the defendant impressed with a species of trust because under the circumstances it is against good conscience for the defendant to keep the money.

*Id.* (internal quotations and citations omitted). Although the claim rests upon equitable principles because it concerns the broad considerations of right, justice and morality, it is "considered an action at law." *Id.* (internal quotations and citations omitted).

Accepting as true all of the factual allegations set out in the complaint, drawing inferences from those allegations in the light most favorable to the plaintiffs, and construing the complaint liberally, *see Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000), in the Court's view, the plaintiffs set forth a cognizable cause of action for money had and received against Hall, Rothschild, Simons and Staller.

Accordingly, the motion to dismiss the claim of money had and received against these defendants is denied.

### F. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) (it is the usual practice upon granting a motion to dismiss to allow leave to replead). Leave to amend should be freely granted, "especially where dismissal of the complaint [is] based on Rule 9(b)." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54–55 (2d Cir.1995); *Luce v. Edelstein*, 802 F.2d 49, 56–57 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." (citation omitted)). Here, the plaintiffs already filed an amended complaint. However, because the amended complaint was filed pursuant to Fed. R.Civ.P. 15(a), the Court will grant the plaintiff leave to file a third amended complaint to correct the above mentioned pleading deficiencies.

The Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, No. 89 Civ. 1657, 1990 WL 71502 at *10 n. 8 (S.D.N.Y. May 24, 1990).

It has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed. R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

Finally, the Court notes that this decision is made at an early stage in this litigation. Its determination regarding the allegations raised in the amended complaint should not be construed as necessarily going to a likelihood of success on the merits.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants motion to dismiss the amended complaint is granted except as to the Sections 1962(c) and (d) and the common law money had and received claims against the defendants Hall, Rothschild, Simons and Staller in their individual capacities; and it is further

**ORDERED,** that the plaintiff is granted leave to file a third amended complaint within thirty days from the date of this order and that the failure to file within this time period will render the dismissal of the plaintiffs' claims that were dismissed as a result of this decision, with prejudice; and it is further

**ORDERED,** that within thirty dates after the filing of the second amended complaint, the plaintiff shall file a RICO case statement consistent with Section 9.2 of the Local Rules for the Northern District of New York, attached to this Memorandum of Decision and Order as Appendix 1; and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Arlene R. Lindsay forthwith to schedule the completion of discovery; and it is further

**ORDERED,** that the Clerk of the Court is hereby directed to amend the caption as follows:

AARON BREWER, ALEX STYLIANOU, RITA BOWMAN and WILLIAM WALCOTT, individually and on behalf of all other similarly situated,

Plaintiffs,

-against-

WILLIAM H. HALL, individually, WALTER ROTHSCHILD, individually, JAMES SIMONS, individually, and STALLER, individually,

Defendants.

**SO ORDERED.**